OPINION
{¶ 1} This matter is before the Court on the Notice of Appeal of Christopher Culbertson, filed April 18, 2008. On August 4, 2007, Culbertson was arrested for illegal possession of drug paraphernalia, in violation of R.C. 2925.14, a misdemeanor of the fourth degree, and possession of marijuana (less than 100 grams), in violation of R.C. 2925.11, a minor *Page 2 
misdemeanor. Culbertson filed a Motion to Suppress, which was overruled on March 21, 2008, after a hearing.
 {¶ 2} On April 7, 2008, Culbertson pled no contest to both charges, and he was found guilty in Fairborn Municipal Court. On the charge of possessing drug paraphernalia, the court sentenced Culbertson to 30 days in jail, which it suspended on the condition that there be no similar violations for two years. Culbertson was also placed on two years of intensive community control and ordered to complete a drug/alcohol assessment. Additionally, Culbertson was fined $100.00, and his driver's license was suspended for six months. On the possession of marijuana charge, Culbertson was fined $100.00, and he received a six-month license suspension. Culbertson filed a motion to stay his sentence pending appeal, and the court granted his motion on April 25, 2008.
 {¶ 3} On the date of the incident herein, Officer M.K. Berry of the Fairborn Police Department was assigned to the Fairborn Apartments as part of a "Weed and Seed," or zero tolerance enforcement program. According to Officer Berry, the Fairborn Apartments has the highest crime rate in the city and the highest "call load," which means the "most calls for service, people calling in asking for police assistance, as well as most arrests that were happening in the city at the time." Officer Berry is familiar with the criminal activity at the apartment complex from his earlier work as a dispatcher for the Fairborn Police Department, and also from serving as a Fairborn police officer for almost two years. Officer Berry has responded to multiple calls at the Fairborn Apartments and made several arrests there for "everything from trafficking in marijuana to trafficking in crack cocaine to possession of various types and amounts of drugs." Most of the arrests have occurred at night, according to Officer *Page 3 
Berry.
 {¶ 4} Officer Berry described the apartment complex as "a figure-8, with the outside being a circle and 2 cross streets in the middle." Officer Berry testified that he has completed a drug interdiction class, and he is aware of "certain indicators" of drug activity. For example, a "lot of times, people purchasing drugs or selling drugs will make several loops around an area to make sure there is no police presence before actually going to a point of sale or point of purchase." Officer Berry testified that he has observed such conduct on least 10 prior occasions.
 {¶ 5} On the evening of August 4, 2007, Officer Berry had parked his cruiser on one of the cross streets within the complex and was on foot patrol when he observed Culbertson drive "several times around the horseshoe-type area of Fairborn Apartments at a slow rate of speed." According to Officer Berry, Culbertson "[n]ever left the complex. He went outside the outside perimeter of the complex, the Wallace to Emerson Drive, and made that circle." Culbertson eventually pulled his car to the side of the road near the entrance to the apartments and stopped. Officer Berry then approached Culbertson's vehicle on foot. Officer Berry testified that he asked Culbertson if he could speak with him "and advised why I was making contact with him, due to his suspicious activity." Culbertson responded that he was looking for the home of a relative. Officer Berry testified, "My past experience, going to a relative's house, you would know where a relative lives and you would go directly there. It arose further suspicions with me." Officer Berry asked Culbertson if he could search his vehicle, and Culbertson refused to consent to a search of his vehicle, but he did consent to a search of his person. In the course of the search of his person, Officer Berry retrieved a marijuana pipe. Marijuana was later found during an inventory search of Culbertson's vehicle. *Page 4 
 {¶ 6} At the hearing on the motion to suppress, Culbertson argued that his presence in a high crime area, standing alone, did not justify his stop, and that Officer Berry lacked a reasonable and articulable suspicion to stop him. The court determined, "defendant's vehicle was already stopped and parked at the time that Officer Berry approached the defendant while still in the vehicle. Generally, an officer on routine patrol is lawfully entitled to approach and investigate occupants of stationary vehicles. The Court finds that as the vehicle was already stopped and parked [and] that the police approach and encounter does not implicate the Fourth Amendment as it is a consensual encounter. Even assuming arguendo, that it was a stop, the Court finds that the officer had experience and training in detection of drug activity, that the `stop' took place in a high crime area at night in the dark, that the officer observed the defendant's vehicle loop twice around the perimeter of the complex without stopping, parking, or picking anyone up which * * * is an indicator per the officer's training of potential drug activity. The Court finds that these facts support a reasonable suspicion that defendant was engaged in criminal activity. The Court notes that defendant further consented to a search of his person when asked by Officer Berry."
 {¶ 7} Culbertson asserts two assignments of error, which we will consider together. They are as follows:
 {¶ 8} "WHETHER THE POLICE HAD A REASONABLE SUSPICION TO CONDUCT A TERRY STOP," And,
 {¶ 9} "WHETHER THE EVIDENCE SHOULD BE SUPPRESSED BECAUSE THE SEARCH AND SEIZURE OF MR. CULBERTSON VIOLATED MR. CULBERTSON'S CONSTITUTIONAL RIGHT AGAINST UNREASONABLE SEARCH AND SEIZURES." *Page 5 
 {¶ 10} "Appellate courts give great deference to the factual findings of the trier of facts. (Internal citations omitted). At a suppression hearing, the trial court serves as the trier of fact, and must judge the credibility of witnesses and the weight of the evidence. (Internal citations omitted). The trial court is in the best position to resolve questions of fact and evaluate witness credibility. (Internal citations omitted). In reviewing a trial court's decision on a motion to suppress, an appellate court accepts the trial court's factual findings, relies on the trial court's ability to assess the credibility of witnesses, and independently determines whether the trial court applied the proper legal standard to the facts as found. (Internal citations omitted). An appellate court is bound to accept the trial court's factual findings as long as they are supported by competent, credible evidence. (Internal citations omitted)." State v. Purser, Greene App. No. 2006 CA 14,2007-Ohio-192, ¶ 11.
 {¶ 11} "The Fourth Amendment to the United States Constitution protects individuals from unreasonable searches and seizures. Terry v.Ohio (1968), 392 U.S. 1, 88S.Ct. 1868, 20 L.Ed.2d 889. Not all interactions between citizens and the police, however, constitute a seizure. Rather, the interactions between citizens and law enforcement officers can fall within three distinct categories: a consensual encounter, an investigative detention, and an arrest. State v.Taylor (1995), 106 Ohio App.3d 741, 747-749, 667 N.E.2d 60.
 {¶ 12} "Consensual encounters occur when the police merely approach a person in a public place and engage the person in conversation, and the person remains free not to answer and to walk away. (Internal citation omitted). The encounter remains consensual even if the officer asks questions, requests to examine an individual's identification, and asks to search the person's belongings, provided that *Page 6 
the officer does not convey that compliance is required. (Internal citation omitted). The Fourth Amendment guarantees are not implicated in such an encounter unless the police officer has by either physical force or show of authority restrained the person's liberty so that a reasonable person would not feel free to decline the officer's requests or otherwise terminate the encounter.' (Citations omitted)Taylor, 106 Ohio App.3d at 747-48.
 {¶ 13} "An individual is subject to an investigatory detention when, in view of all the circumstances surrounding the incident, by means of physical force or show of authority, a reasonable person would have believed that he was not free to leave or is compelled to respond to questions. (Internal citations omitted). Under Terry, police officers may briefly stop and/or temporarily detain individuals in order to investigate possible criminal activity if the officers have a reasonable, articulable suspicion that criminal activity may be afoot. (Internal citation omitted). `Reasonable suspicion entails some minimal level of objective justification for making a stop — that is, something more than an inchoate and unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause.' (Internal citation omitted). We determine the existence of reasonable suspicion by evaluating the totality of the circumstances, considering those circumstances `through the eyes of the reasonable and prudent police officer on the scene who must react to events as they unfold.' (Internal citations omitted)." State v. Lewis, Montgomery App. No 22726,2009-Ohio-158, ¶ 20-22.
 {¶ 14} First, we agree with the trial court that Culbertson's encounter with Officer Berry was consensual. Officer Berry's testimony indicates that Culbertson parked his vehicle voluntarily on the side of the road, near the entrance to the apartment complex, *Page 7 
without any signal or direction from Officer Berry to pull over and stop. At that point, Officer Berry was not required to have a reasonable, articulable suspicion of criminal activity to approach Culbertson. See, State v. Potter, Butler App. No. CA2006-07-166,2007-Ohio-4216. Further, there is nothing in the record to indicate that the encounter involved the show or threat of physical force, or that Culbertson was not free to leave. Culbertson refused to consent to the search of his vehicle, yet he voluntarily consented to a search of his person, which resulted in the seizure of drug paraphernalia.
 {¶ 15} Even if we were to determine that the encounter herein amounted to an investigatory stop pursuant to Terry, we conclude that Officer Berry had a reasonable, articulable suspicion of criminal activity, as his testimony indicates. An experienced officer with specific training in the types of behavior indicative of drug-related crime, who is familiar with the problems unique to the Fairborn Apartments, Officer Berry described Culbertson's conduct and statement that prompted his request to search. Officer Berry observed Culbertson, in the highest crime area of the city, at night, slowly circling through the Fairborn Apartments, conduct Officer Berry knows to be consistent with drug-related activity. In the course of his encounter with Culbertson, Officer Berry's suspicion of criminal activity was heightened by Culbertson's claim that he was searching for the residence of his relative. Officer Berry's experience suggested to him if such assertions were true, Culbertson would know where the relative lived and would park in the designated area, rather than on the street near the entrance to the apartment complex.
 {¶ 16} After a thorough review of the record, we conclude that the interaction *Page 8 
between Culbertson and Officer Berry was consensual. Although the prosecutor did not elicit testimony justifying a pat down of Culbertson or a search of his vehicle, the trial court concluded that Culbertson consented to a search of his person, and we must defer to the trial court's factual determination on this point. In other words, while nothing suggests that a pat down was necessary for officer safety, the issue is rendered moot by Culbertson's consent to the search of his person.
 {¶ 17} Since the encounter herein did not violate Culbertson'sFourth Amendment right to be free of unreasonable searches, and since Culbertson consented to the search of his person, the contraband retrieved is not subject to suppression, and Culbertson's assigned errors are overruled.
Judgment affirmed.
GRADY, J. and WOLFF, J., concur.
(Hon. William H. Wolff, Jr., retired from the Second District Court of Appeals, sitting by assignment of the Chief Justice of the Supreme Court of Ohio).
Copies mailed to:
Betsy A. Deeds Christopher L. Beck Hon. Beth W. Root *Page 1